Kathryn Evans, CSB #240149
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101
Tel: (206) 553-2558
Email: kathryn.evans@usdoj.gov

Attorneys for Gregory M. Garvin,
Acting United States Trustee for Region 18

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>The Truck Depot, LLC<br><br>Debtor. | Case No. 23-31457-PCM-11<br><br>**UNITED STATES TRUSTEE'S MOTION TO CONVERT OR DISMISS ON SHORTENED TIME** |

The Acting United States Trustee, Gregory M. Garvin (the "**UST**"), hereby moves the Court for an order converting or dismissing the chapter 11 case of Truck Depot, LLC (the "**Debtor**") for cause, including failing to provide adequate insurance coverage for the estate's assets, the unauthorized use of cash collateral, and failure to timely provide information requested by the United States Trustee (the "**Motion**"). In support of the Motion, the United States Trustee respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 11 U.S.C. §§ 307 and 1112(b).

2. The UST brings the Motion pursuant to the UST's authority to supervise the administration of bankruptcy cases under 28 U.S.C. § 586(a)(3) and pursuant to 11 U.S.C. § 1112(b)(1).

## BACKGROUND

3. On July 5, 2023, the Debtor filed a voluntary petition for chapter 11 relief, and elected to proceed under subchapter V.

4. On July 6, 2023, Amy Mitchell was appointed subchapter V trustee.

5. On July 11, 2023, the Debtor filed a *Motion for Authority to Use Cash Collateral* (the "**Cash Collateral Motion**"). ECF No. 20. The Cash Collateral Motion identified at least four creditors with an interest in the Debtor's cash. *Id.* at ¶ 3. Attached as Exhibit 1 to the Cash Collateral Motion was a pro forma budget detailing the Debtor's anticipated revenue and expenses, which was subsequently amended on July 17, 2023 (as amended, the "**Budget**"). ECF No. 31. The Budget reflected it's anticipated expenses would far exceed its income for the foreseeable future and that the Debtor would be operating in the red until at least until December of 2023. *Id.*

6. On July 13, 2023, the Court held the first hearing on the Cash Collateral Motion wherein the Court, orally authorized the use of cash collateral for a very limited set of expenses, including the salary of two non-insider employees Ms. Cocan and a receptionist as well as several other small expenses. The Court then conditioned the payroll payments of the Debtor's insider affiliates[1] on the Debtor providing proof of hours worked to the UST for review. ECF No. 29 (Audio Recording of July 13th Hearing). To date, no order has been entered approving the use of any of the above limited expenses, nor has the Debtor provided any proof of hours worked for the insiders seeking compensation.

7. On July 19, 2023, the Court held a continued hearing on the Cash Collateral Motion during which the Debtor noted that it had not yet obtained additional financing as hoped. ECF No. 35 (Audio Recording of July 19th Hearing). During the hearing the Debtor's principal was asked

---

[1] Isaac Davidyan and Ivan Davidyan

about an $11,000 July 3, 2023 rent check (the "**July Rent**") which the lessor was asked to make payable to Davidyan Holdings instead of making it payable to the Debtor. *See* ECF No. 32 (copy of checks). The Debtor's principal explained that the check was made payable to Davidyan Holding because at the time the Debtor's bank balances were negative. *Id.* at 12:21 minute mark of audio file. He then stated that he could provide records verifying that the July Rent funds were later transferred back to the Debtor. *Id.* The Court then reminded the Debtor that he has obligations under the Bankruptcy Code to follow its rules and procedures and therefore all sums due to the Debtor needed to be paid to the Debtor. *Id.* at 13:30 minute mark.

8. On July 19, 2023, the undersigned sent Debtor's counsel an email requesting the Debtor provide the records showing the July Rent had been transferred from Davidian Holdings to the Debtor. The undersigned requested that information be provided by the end of the day on July 20th and also requested proof of insurance be provided by that date as well.

9. On July 20, 2023, the Debtor provided proof of insurance, and several June 2023 bank statements. However, the insurance was in the name of Davidian Holdings, LLC not the Debtor and none of the bank statements reflected the July Rent being transferred to the Debtor.

10. On July 21, 2023, the undersigned sent a follow-up request to Debtor's counsel seeking the records which verified the July Rent had been turned over to the Debtor.

11. On July 25, 2023, the undersigned sent another follow-up request to Debtor's counsel asking if the insurance had been changed to the Debtor's name and inquiring about the status of the records detailing the disposition of the July Rent. In a later email that day, the undersigned sent another email asking the Debtor to provide current July 2023 bank records so that the parties could understand the Debtor's cash position in advance of the July 26th 9:30 a.m. hearing.

12. The Debtor responded on July 25, 2023, and in the early morning hours of July 26, 2023, and provided copies of its July bank records. None of the bank records reflected the deposit of the July Rent. Those records did reflect that the Debtor had paid the insider affiliate employe's salaries. The July 2023 records for the Debtor's DIP account reflected that as of July 26, 2023 the Debtor had a cash balance of $15, 621.

13. On July 26, 2023, the Court held a continued hearing on the Cash Collateral Motion. At that hearing the Debtor acknowledged it had not yet obtained post-petition financing, and that it had paid the salaries of two insiders without court authority or creditor consent.

14. To date, the Debtor has not provided the UST with proof of insurance, provided the records reflecting the deposit of the July Rent, nor have they obtained an order authorizing the use of cash collateral. Similarly, the Debtor never provided any time records to the UST for the insiders who sought approval of their compensation. Accordingly, for the reasons set forth below, the case should be converted or dismissed.

## **RELIEF REQUESTED**

Section 1112(b) of the Bankruptcy Code provides that "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under chapter 11 to a case under chapter 7 or dismiss a case under chapter 11, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1). Section 1112(b) establishes a two-step analysis for addressing questions of conversion or dismissal. First, the court must determine whether cause exists for conversion or dismissal. Second, the court must "apply a 'balancing test' to choose between conversion or dismissal based upon the 'best interests of the creditors and the estate.'" *In re AVI, Inc.*, 389 B.R. 721, 729 (B.A.P. 9th Cir. 2008) *citing In re Nelson*, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006); *see also In re Owens*, 552 F.3d 958, 960-61 (9th Cir. 2009) (court must consider interests of all creditors).

As to the first step, § 1112(b)(4)(C) specifically provides that "cause" to dismiss or convert a chapter 11 petition includes "failure to maintain appropriate insurance that poses a risk to the estate or the public." *In re Gilroy*, No. BAP NH 07-054, 2008 WL 4531982, at *5 (B.A.P. 1st Cir. Aug. 4, 2008), *see also Derivium Capital LLC v. U.S. Trustee (In re Derivium Capital LLC)*, No. 5 Civ. 10845, 2006 WL 1317021, *11 (S.D.N.Y. May 12, 2006) (affirming the bankruptcy court's decision to convert a chapter 11 case partially because the debtor lacked proper insurance coverage); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed in part, because the debtor failed to show that there was insurance on residential property he owned). Here, the Debtor operates a truck parking business which is, upon information and belief, open to the public for business, and as of the date of the filing of this Motion the Debtor has not provided proof that its operations are covered by insurance in its own name. Simply put, the possibility of a post-petition uninsured loss warrants the conversion or dismissal of this case under § 1112. Accordingly, cause exists under § 1112(b)(4)(C).

In addition to lack of insurance, cause also exists under § 1112(b)(4)(D) given the Debtor's unauthorized use of cash collateral when such use is substantially harmful to one or more creditors. Here, the Debtor acknowledged at the July 26th Cash Collateral hearing that it had used cash collateral to pay the salaries of two insiders, specifically the Debtor's principal's brother and father. Notably, a review of the July 2023 DIP Account transactions, show a $19,700 deposit from the Debtor's pre-petition account on July 17, 2023, and another $3,080 deposit on July 21, 2021. That appears to be the Debtor's sole July income so far. From that account $7,159 in withdrawals have been made, including a $1,750 in a Zelle Payroll Transaction made to Isaac Davidyan and a $2,750 transfer to Ivan Davidyan, presumably also for payroll. The other withdrawal transactions included $2,250 for Ms. Cocan's salary (which the UST is treating as a permissible use of cash collateral), four small "apple.com/bill" transactions, a payment of a propane bill and another unknown $29.99 charge to www.angi NY. Put another way of the $4,909 in unauthorized cash collateral transactions over 90% of them went to satisfying insider's administrative/pre-petition wage claims. The Debtor's decision to prefer insider administrative claims over other

administrative claims, coupled with the Debtor's inability to confirm that the July Rent was returned to the estate is evidence that the estate's creditors, including those with an interest in cash collateral are being substantially harmed. This warrants a finding of cause under § 1112(b)(4)(D).

The UST also asserts cause exists as a result of the Debtor's failure to provide information reasonably requested by the UST under 11 U.S.C. § 1112(b)(4)(H). Specifically, the UST has requested proof that the July Rent was deposited for the benefit of the Debtor but so far no records have been provided.

The UST also reserves the right to supplement this Motion in the event additional cause is discovered in the debtor's to be filed schedules and or at the August 1, 2023 Creditors Meeting.

As to the second prong of the § 1112(b) analysis, the United States Trustee is not aware of any "unusual circumstances" present that justify not converting or dismissing the chapter 11 case.

Accordingly, and for the reasons set forth herein, the United States Trustee respectfully requests that the Court enter its Order converting this chapter 11 case to a case under chapter 7, or dismissing this chapter 11 case, whichever the Court determines to be in the best interest of creditors.

Dated: July 26, 2023.

Respectfully submitted,

Gregory M. Garvin
Acting U.S. Trustee for Region 18

/s Kathryn Evans
Kathryn Evans, Cal Bar 240149
Attorney for the United States Trustee